United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>KRISTINE MARIE SHUEY,<br><br>Debtor. | Case No. 10 BK 27054<br>Chapter 7<br>Judge: Hon. Jack B. Schmetterer |

## OPINION ON REMAND [DKT. NO. 61] OF DEBTOR'S MOTION TO REOPEN AND IMPOSE SANCTIONS [DKT. NO. 20] AND MOTION TO ALTER OR AMEND [DKT. NO. 33]

Pursuant to the guidance issued by the District Court in its Memorandum Opinion and Order remanding this Bankruptcy Court's (1) Memorandum Opinion and Order on Debtor's Motion to Reopen and Impose Sanctions [Dkt. Nos. 28 & 30] and (2) Memorandum Opinion on Debtor's Motion to Alter or Amend [Dkt. Nos. 44 & 46] for further proceedings, the Bankruptcy Court ordered the parties to brief the issues presented by the District Court for reconsideration. [Dkt. No. 65.]

For reasons articulated below, it is now ordered that Debtor Kristine Lathrop's (formerly known as Kristine Shuey and heretofore referred to as "Debtor") Motion to Reopen and Impose Sanctions [Dkt. No. 20] and Motion to Alter or Amend [Dkt. No. 33] will be granted insofar as efforts to collect by Creditor will be stayed by separate order entered concurrently herewith. To the extent that Debtor's Motions seek sanctions against Creditor for asserted past violations of the discharge injunction, her Motions are denied.

## FACTS AND PROCEDURAL HISTORY

### A. History of the Parties and the Bankruptcy Case

Debtor was married to Scott David Shuey until May 5, 2011, when the couple divorced. Her former father-in-law, Craig Shuey ("Creditor"), co-signed several student loans obtained by Debtor in 2004 and 2005. On June 17, 2010, Debtor filed her petition for Chapter 7 bankruptcy relief and received a discharge order on October 26, 2010. For payments made on Debtor's student loans up to October 4, 2010, Debtor listed Creditor in her bankruptcy schedules.

Creditor filed a collection action against Debtor in DeKalb County, Illinois on October 4, 2011 (Case No. 11-MR-117) in an attempt to recover payments made after Debtor had filed for bankruptcy relief. Creditor then refiled the action in the Supreme Court of New York, Dutchess County (Case No. 7172/2012), as Debtor had moved out of state. On January 4, 2016, Creditor obtained judgment in his favor in New York and subsequently enrolled the judgment in Illinois.

1

Thereafter, Creditor instituted a collection proceeding in Kane County, Illinois (Case No. 16-LM-719) and began garnishing Debtor's wages. On July 25, 2017, Creditor instituted another state-court proceeding in Kane County (Case No. 17-MR-949) to recover payments made on the loans after the New York judgment.

Debtor then filed her Motion to Reopen her bankruptcy case and Impose Sanctions [Dkt. No. 33] on October 27, 2017. Debtor argued that while the student loans themselves were presumptively not discharged (an issue which is not in dispute), amounts owing to Creditor due to his post-petition payments as co-obligor of the student loan were discharged. This Court granted Debtor's Motion insofar as it sought to reopen her bankruptcy case, but denied relief sought in the form of sanctions against Creditor because it found that Creditor's equitable right to payment based on the post-petition payments of the loan arose only after the bankruptcy petition had been filed, and generally, only obligations due at the time the petition is filed are dischargeable. [Dkt. Nos. 28 & 30.] Debtor then filed her Motion to Alter or Amend [Dkt. No. 33] on January 18, 2018, arguing that the Court had made legal errors in its analysis warranting reconsideration of the central question of whether obligations between Debtor and Creditor as co-obligor on the loan had been discharged in the bankruptcy. Ultimately, this Court denied that Motion as well. [Dkt. Nos. 44 & 46.] Likewise, this Court denied Creditor's Motion to Impose Sanctions [Dkt. No. 39] because Creditor had failed to show that Debtor had acted unreasonably in seeking reconsideration of her initial Motion. [Dkt. Nos. 48 & 50.]

## B. Debtor's Appeal and the District Court's Decision

Debtor appealed the rulings on her Motions in April 2018, and for not imposing sanctions upon Creditor *sua sponte* for the filing of his Motion for Sanctions. The appeal was heard before Judge Dow of the District Court. Debtor contended that there was error in concluding that only pre-petition installment payments were discharged absent an acceleration clause, that the obligations between Debtor and Creditor were not conditional until they became past due on Debtor's part, and that it was error to deny Debtor's request for a hearing to determine the extent to which Creditor collected more than he is entitled to.

The District Court Judge issued an Opinion and Order on April 1, 2019. [Dkt. No. 61.] The opinion noted that Debtor's central challenge is that there was error here in concluding that Creditor sought to recover a post-petition debt, rather than a pre-petition debt that was discharged.

2

Citing 11 U.S.C. § 101(12), the District Court noted that the Bankruptcy Code definition of "debt," meaning a "liability on a claim," has been interpreted broadly to mean a, "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *In re Conseco Inc.*, 330 B.R. 673, 684 (Bankr. N.D. Ill. 2005) (quoting 11 U.S.C. § 101(5)(A)). The District Court Opinion goes on to say that this Court erroneously applied the wrong test in rejecting sanctions based on its conclusion that because Creditor's right to equitable contribution had accrued post-petition, Creditor was not attempting to collect on a pre-petition debt.

Rather, the Opinion indicated in footnote four, "[t]he ultimate question is whether Respondent's claims for post-petition payments of Debtor's student loans constitute contingent claims under the Bankruptcy Code." It explained that because the definition of a "claim" includes those that are contingent, even a claim contingent upon uncertain future events may be discharged in bankruptcy. *Matter of Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990). Thus, the Opinion explains, "a party may sometimes have a contingent claim that must be raised in a reorganization proceeding even before a cause of action has accrued," citing *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1192 (7th Cir. 1993). The fact that that Creditor's claim was therefore wholly contingent upon Debtor's non-payment does not necessarily mean that Creditor's claim was a post-petition claim as we earlier ruled. The District Court Opinion further explained that the Seventh Circuit in *Rosteck* had reasoned that post-petition payments for condo assessments constituted pre-petition claims because they arose from a pre-petition agreement to pay the assessments. *Rosteck*, 6 F.3d at 697.

However, the Opinion left open for decision here the question of whether Creditor's claim is indeed a contingent claim. A contingent claim, "'might be said to exist somewhere on a continuum between being and nonbeing. At some point on that continuum, a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all.'" *Conseco*, 330 B.R. at 685 (quoting *In re CD Realty Partners*, 205 B.R. 651, 656 (Bankr. D. Mass. 1997)). The District Court noted that bankruptcy courts have taken a variety of approaches to determining whether a claim is a contingent claim within the meaning of the bankruptcy code, including an approach where no claim exists until an injury occurs (as in ordinary tort cases where the victim has no contact with the tortfeasor), an approach under federal environmental statutes where the

3

claimant could have fairly contemplated a claim based upon pre-discharge conditions or conduct, and a simple "fair contemplation" test. *Id.* at 685-86.

The District Court Opinion remanded the proceedings to this Court to determine whether Creditor's claims for post-petition payments of Debtor's loans are contingent claims that were discharged pursuant to the Bankruptcy Code. Likewise, the Opinion left open the question whether this Court would hear any argument regarding the applicability of a Section 523 exception to Creditor's claims. However, the Opinion did rule that Debtor's argument that this Court failed to conduct a hearing was waived on appeal, and it affirmed the opinion refusing to impose sanctions.

**C. The Bankruptcy Proceeding Upon Remand**

The parties were required to brief the issues presented by the District Court Opinion and Order. [Dkt. No. 65.] Both parties filed briefs on remand. Creditor also filed a Response to Debtor's brief on remand and Debtor subsequently filed a Reply.

In Creditor's brief on remand [Dkt. No. 67], he argues that the post-petition payments of Debtor's student loans do not constitute contingent claims and were thus not discharged by the bankruptcy case. Creditor argues that unlike the condo association dues described by the District Court in *Rosteck*, the underlying student loan debt in this case was non-dischargeable. The contract was not directly between Debtor and Creditor, but instead involved the student loan lender as the intermediary between the parties. Unlike the debtor in *Rosteck* the foreseeability of any payments due by Creditor upon the student loan was in total control of the Debtor. Unlike the creditor in *Rosteck*, Creditor in the instant case has no alternative remedy such as foreclosing on a condo.

Creditor further argues that Debtor's non-payment of the student loans could not have been in fair contemplation of the parties when they entered into the agreement because only Debtor would have knowledge of any future missed payments. As such, argues Creditor, a result where Creditor's right to equitable contribution is discharged as a pre-petition claim would mean Debtor's student loans are effectively discharged as she would not need to make any payments and the cost would fall squarely upon Creditor.

Creditor also makes the argument that the debt owed to him is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8)(A)(ii).

4

Creditor argues that several courts have held that co-obligors on student loans are entitled to benefit by this exception to discharge as, "the provision of an accommodation, in order to secure for a student funds for the purpose of paying educational expenses, gives rise to an obligation on the part of the debtor to repay funds received as an educational benefit once the co-signer is required to honor its obligation to pay the debt." *In re Kelly*, 582 B.R. 905, 506 (S.D. Texas 2018) (citing *Benson v. Corbin*, 506 B.R. 287, 297-98 (Bankr. W.D. Wash. 2014)); *see also Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014).

In Debtor's brief on remand [Dkt. No. 66], she argues that under the broad definition of a claim articulated in the District Court's Opinion, the entire obligation owed to Creditor was discharged in her bankruptcy case. Debtor's brief on remand also, somewhat bizarrely, discusses several issues that were not addressed in the District Court's Opinion and are not discussed in Creditor's brief on remand. For instance, Debtor argues that the marital settlement agreement between herself and her ex-husband does not establish any liability between the parties. Debtor also argues that Shuey's collection suit, based partly on a breach of contract claim, does not constitute new post-petition liabilities incurred by Debtor. Moreover, Debtor also argues that Creditor's payments do not constitute new post-petition obligations of Debtor under Creditor's claim of indemnity in his collection suit either. Additionally, Debtor asserts that Creditor's claim of quantum meruit in his collection action against Debtor also does not constitute new post-petition liability. It is not clear why Debtor raised these issues. This Court's scheduling order [Dkt. No. 65] made clear that the parties were to brief the issues presented in the District Court's Opinion and Order and did not mention the underlying collection lawsuit at all.

Debtor goes on to argue that the entire obligation between the parties was discharged in her bankruptcy case. As a result, Debtor argues, Creditor's attempts to collect are violations of the discharge injunction and represent sanctionable conduct. *In re Hardej*, 563 B.R. 855, 863 (Bankr. N.D. Ill. 2017). Debtor then requests that the Creditor be ordered to pay back all wages deducted from her paychecks, fees and expenses related to all of the various lawsuits, and punitive damages for willful disregard and violation of the discharge injunction.

Creditor filed a Response to Debtor's brief on Remand [Dkt. No. 68] on June 18, 2019. Creditor argues that Debtor's brief does not adequately address the issues presented by the District Court; instead it rehashed issues related to the underlying state court collections case. Creditor argues that Debtor's conclusory citation to 11 U.S.C. § 101(5)(A) ignores the District

5

Court's ultimate question: whether Creditor's claim is a claim at all within the meaning of the Bankruptcy Code. Creditor then goes on to restate the argument presented in his own brief on remand. Finally, Creditor argues that even if he is found to have violated the discharge injunction, such a conclusion does not lead to inevitable imposition of civil sanctions the Supreme Court has recently written that a court may, "impose civil contempt where there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).

Debtor filed her Reply [Dkt. No. 69] on June 18, 2019. First, Debtor addresses Creditor's argument asserting a 523(a)(8)(A)(ii) exception. Debtor argues that exceptions to discharge, "should be confined to those plainly expressed," and construed narrowly against creditors. *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998). The plain language of Section 523(a)(8), Debtor argues, means that only true educational loans are subject to the exception from discharge and that Creditor's payments to the student loan company do not fall within that definition. Additionally, Debtor argues that the majority of courts interpreting 523(a)(8)(A)(ii) as it relates to a co-obligor making payments on a student loan have found that the aforementioned exception does not apply, contrary to Creditor's citations to *Kelly* and *Corbin*. Debtor then argues that Creditor's claim does indeed fall within the definition of a contingent pre-petition claim and was therefore discharged in the bankruptcy.

Finally, Debtor argues that Creditor had no reasonable basis for belief that his conduct in violation of the discharge injunction was lawful, and therefore his conduct is sanctionable pursuant to the Supreme Court's decision in *Taggart*. She further argues that Creditor's arguments in the state court collection action indicate that he did not rely on the theory that he was a surety of Debtor or that the loan was excepted from discharge pursuant to 523(a)(8)(A)(ii). Rather, he then relied on theories including breach of contract, indemnity, and quantum meruit.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). There is also jurisdiction because, "the discharge injunction arises under the Bankruptcy Code at § 524(a)(2)." *In re Torrence*, No. 14-BK-34470,

6

2015 WL 3962529, at *2 (Bankr. N.D. Ill. June 26, 2015), *subsequently aff'd sub nom. Torrence v. Comcast Corp.*, 663 F. App'x 475 (7th Cir. 2016) (citing *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir. 2001)).

## DISCUSSION

The District Court's Opinion and Order identified two key issues to be decided by this Court upon remand: whether Creditor's claim is a contingent pre-petition claim within the meaning of the bankruptcy code (and thus, whether such claim was discharged in the year 2010); and whether Section 523(a)(8)(A)(ii) provides an exception to discharge for Creditor's claim. Each of these issues having been briefed by the parties, are addressed below, along with Debtor's contention that sanctions for past conduct are now appropriate against Creditor.

### A. Creditor's Claim is a Contingent Pre-Petition Claim that was Discharged

Pursuant to the District Court's guidance in its Opinion and Order, the "ultimate question is whether [Creditor's] claims for post-petition payments of Debtor's student loans constitute contingent claims under the Bankruptcy Code."

Creditor argues that this Court was originally correct in ruling that claim against Debtor arose post-petition and did not constitute contingent, pre-petition claims that would have been discharged in 2010. As the underlying debt – the student loan – is non-dischargeable, Creditor claims that the payments he makes and now seeks to collect as contribution from Debtor are also non-dischargeable. Creditor also argues that it was unforeseeable that Debtor would not make payments on the student loans, leaving him to shoulder the burden, and thus, his claim was closer to "non-being" than "being" at the time of the filing of the bankruptcy petition, and therefore cannot properly be considered a pre-petition, contingent claim.

However, as the District Court noted in its Opinion, "contractual liability is generally thought to arise on the date a contract is signed." *Saint Catherine Hosp. of Indiana v. Indiana Family & Soc. Servs. Admin., LLC*, 800 F.3d 312, 316 (7th Cir. 2015) (citing *In re Rosteck*, 899 F.2d 694, 696 (7th Cir. 199)). Thus, "a party may sometimes have a contingent claim that must be raised in a reorganization proceeding even before a cause of action has accrued." *Matter of Chicago*, 6 F.3d at 1192. A potential claim upon contractual liability that has yet to accrue is contingent, meaning it is, "[p]ossible but not assured; doubtful or uncertain; conditioned upon some future event which is itself uncertain or questionable . . . [I]t implies that no present interest exists and that whether such interest or right will ever exist depends upon a future uncertain

7

event." *Matter of Roseteck*, 899 F.2d 694, 697 (7th Cir. 1990) (quoting *Grady v. A.H. Robbins Co.*, 839 F.2d 198, 202 (4th Cir. 1988)).

Debtor and the District Court both indicate that the facts in *Rosteck* are like those at bar. In *Rosteck*, a condominium association continued to levy association dues upon a debtor who had completed a bankruptcy proceeding and received an order of discharge. *Id.* at 694-95. Debtor in *Rosteck* contended that such levies constituted violations of the discharge injunction, but the condominium association argued that it did not levy the assessments until after the filing of the bankruptcy petition, and therefore the claims were post-petition, not pre-petition. *Id.* at 696. The Seventh Circuit ultimately held that since the agreement contemplated debtors', "debt for future assessments, based on their pre-petition agreement to pay those assessments," and since that agreement had, "existed when they filed their bankruptcy petition, that debt was discharged by the bankruptcy court in its discharge order." *Id.*

Creditor's arguments that *Rosteck* is inapplicable are unavailing. While it is true that Congress has since passed 11 U.S.C. § 523(a)(16) rendering homeowners association fees presumptively non-dischargeable, Debtor and the District Court do not cite *Rosteck* for that proposition; rather *Rosteck* is cited for its analysis of how uncertain obligations between parties arising from pre-petition agreements are discharged in bankruptcy.

Additionally, Creditor asserts that there is a qualitative difference between the direct, contractual relationship of the parties in *Rosteck* and the indirect, contractual agreement between Debtor, Creditor as guarantor, and the student loan lender in the instant case. Essentially, Creditor argues that because he and Debtor are not in direct, contractual privity (like the parties in *Rosteck*) he has no contractual remedy against Debtor.

Creditor is correct that he does not have a direct contractual remedy against Debtor: his claim for contribution arises out of the contract pursuant to Illinois law. Therefore, like the creditor in *Rosteck*, a remedy exists for this Creditor to seek contribution from Debtor, though that right arises out of state law rather than the contract itself. Creditor has not offered any explanation or authority supporting his assertion that this is a meaningful distinction. Both the creditor in *Rosteck* and the instant Creditor have claims arising from pre-petition agreements (from the contract itself or from Illinois law) with debtors that are dischargeable in bankruptcy. The mere fact that the Creditor in the instant case does not have a secondary remedy (as noted above, the condo association in *Rosteck* had the right to foreclose against the property) is

unavailing. As an unsecured creditor, his lack of collateral to foreclose upon is a feature of Creditor's claim and not a mistake.

Therefore, as the Seventh Circuit explained in *Rosteck*, *Saint Catherine Hospital* and *Matter of Chicago*, because the agreement between Debtor, Creditor, and the student loan lender arose pre-petition, Creditor's claims for contribution are pre-petition claims that could be dischargeable in bankruptcy, regardless of when the Creditor made payments.

As the District Court indicated in its Opinion, however, one more issue regarding the categorization of Creditor's claim remains outstanding: whether Creditor's claim qualifies as a contingent claim at all. If Creditor's claim is a contingent, pre-petition claim, then barring some applicable exception, the claim was discharged in 2010. "[A] contingent right to payment 'might be said to exist somewhere on a continuum between being and nonbeing. At some point on that continuum, a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all.'" *In re Conseco, Inc.*, 330 B.R. 673, 685 (N.D. Ill. 2005) (quoting *In re CD Realty Partners*, 205 B.R. 651, 656 (Bankr. D. Mass. 1997)). As the *Conseco* opinion notes, courts have taken several approaches to determining whether a hypothetical future claim constitutes a contingent claim within the meaning of the Bankruptcy Code. *Id.* at 685-86. In the tort context, "courts have generally held that that no claim exists for purposes of the Bankruptcy Code until the injury occurs." *Id.* at 685. With regards to environmental statutes, "courts generally look at whether the claimant could have fairly contemplated a claim based on pre-discharge conditions or conduct." *Id.* at 685-86. In the context of breach of contract, courts have, "applied a 'fair contemplation' test." *Id.* at 686.

As this case involves neither tort nor environmental statutes, the correct standard appears to be whether Creditor's hypothetical claim would have been within the fair contemplation of the parties at the time they entered into the agreement. Creditor argues that because Debtor entirely controls whether payments are made on the student loans, it cannot be said that his claim for contribution would have been within the fair contemplation of the parties. This argument is belied by the simple fact that Creditor signed the loan as a guarantor. Therefore, if Debtor were to miss any payments the Creditor would be held responsible for such payments. Parties signing a guaranty on a loan will reasonably expect that they will be required to make up for any missed payment as that is exactly what such an agreement contemplates. "[A] personal guaranty is the classic example of a contingent liability because the guarantor's liability is triggered only if the

9

principal obligor has failed to satisfy the debt." *In re Russo*, 494 B.R. 562, 566 (Bankr. M.D. Fla. 2013). Pursuant to the District Court's guidance in its Opinion, Creditor's claim would have been in fair contemplation of the parties at the time the agreement was signed, and Creditor's claim is therefore a pre-petition, contingent claim that may have been discharged in the year 2010.

Creditor's final argument, that such a holding effectively results in a *de facto* discharge of Debtor's student loans is unavailing. Assuming *arguendo* that Creditor's claim is a pre-petition, contingent claim to which no Section 523 discharge exception applies (an issue argued by the parties in their briefs and discussed in greater detail in Section B of this opinion), Debtor would not be obliged to make any payments on the student loan. The resulting default is then the obligation of Creditor who, if such a debt were truly discharged in the year 2010, has no remedy against Debtor for contribution. This is not an unforeseeable situation. No party is *forced* to co-sign a loan. Creditor voluntarily assumed the burden of making up for missed payments on Debtor's student loans. Creditor is now obligated by that agreement to make all the missed payments. The reason the instant scenario appears strange is because Debtor has missed several payments and may miss several payments going forward. With no recourse against Debtor, Creditor is apparently left holding the bag on the remaining balance of the student loan.[1] But, that is the logical conclusion and result of the guaranty unless Creditor's pre-petition, contingent claim is not subject to a discharge exception.

### B. 11 U.S.C. § 523(a)(8)(A)(ii) Does Not Apply to Creditor's Claim

The only question remaining, as identified by the District Court in its Opinion, is whether Creditor's pre-petition, contingent claim is excepted from the automatic stay pursuant to any provision of 11 U.S.C. § 523. Creditor argues that pursuant to 11 U.S.C. § 523(a)(8)(A)(ii), his claim is essentially the equivalent of an educational benefit, such that it is presumptively excepted from discharge because "the provision of an accommodation, in order to secure . . . student funds for the purpose of paying educational expenses, gives rise to an obligation on the

---

[1] Although this issue is not raised in the instant case, the hypothetical resulting scenario in this case leads to another problem: what becomes of the student loan if *Creditor's* obligation under the loan is also dischargeable in bankruptcy? Several courts have held that, pursuant to 11 U.S.C. § 523(a)(8), a non-student co-obligor's obligations under a student loan can be discharged in bankruptcy. 120 A.L.R. Fed. 609, § 4[b] (Originally published in 1994) (collecting cases). If Debtor is under no obligation to Creditor to contribute towards the payments she missed, and Creditor discharges his obligations under to the loan in bankruptcy, who is responsible for the student loan? Presumably, primary liability on the loan reverts to Debtor as the underlying student loan is presumptively non-dischargeable in bankruptcy pursuant to Section 523(a)(8). As this issue is not before the Court, however, a decision need not be made. The foregoing footnote is only to indicate that there is great potential for muddied waters in this area of the law.

part of the debtor to repay funds received as an educational benefit once the co-signer is required to honor its obligation to pay the debt." *In re Kelly*, 582 B.R. 505, 506 (S.D. Texas 2018) (citing *Benson v. Corbin*, 506 B.R. 287, 297-98 (Bankr. W.D. Wash. 2014)); *see also Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014).

Pursuant to the line of cases Creditor has cited, debtors are obligated to co-signers of student loans for any payments made on the loan upon the debtor's default. But, there is a substantial split amongst bankruptcy courts regarding this issue. Several courts have taken the Supreme Court's view that exceptions to discharge, "should be confined to those plainly expressed," and construed narrowly against creditors. *Kawaauhau*, 523 U.S. at 62. The *Corbin*, *Kelly*, and *Rust* cases cited by Creditor rely on a broad interpretation of the phrase, "obligation to repay funds as an educational benefit," in Section 523(a)(8)(A)(ii). *Corbin* 506 B.R. at 296-97. In *Kirkish v. Meritor Sav. Bank*, 144 B.R. 367 (Bankr. W.D. Mich. 1992), for instance, the bankruptcy opinion looked to the legislative history of 11 U.S.C. § 523(a)(8) and determined that Congress intended a narrow interpretation of what constitutes a student loan. That opinion determined that the motivations of a co-obligor differ sufficiently from those of a student loan holder such that a co-obligor cannot commit the same type of abuse which Section 523(a)(8) is meant to remedy. *Id.* Other opinions have held similarly that loans made for educational purposes of another person do not constitute "educational loans" within the meaning of the Bankruptcy Code. *In re Meier*, 85 B.R. 805, 806 (Bankr. W.D. Wis. 1986); *In re Bawden*, 55 B.R. 459, 461 (Bankr. M.D. Ala. 1985); *In re Washington*, 41 B.R. 211, 214 (Bankr. E.D. Va. 1984).

It does not appear that a bankruptcy judge has yet held, in the case of a co-obligor paying off part or all the underlying debt related to a debtor's student loan, that the resulting obligation is eligible for discharge because it does not fall within the exception in Section 523(a)(8)(A)(ii). But, pursuant to the Supreme Court's mandate to narrowly construe exceptions to discharge, the line of cases cited above holding that the obligation of the co-signer of a student loan is not an "educational loan" within the meaning of the Bankruptcy Code is compelling. If the obligation of a co-signer of a student loan cannot properly be categorized as an "educational loan," then if the co-signer pays off the entirety of the loan, there is no basis on which to recharacterize the resulting obligation created between the co-signer and debtor as an "educational loan." Creditor has not cited any authority indicating, based on the student loan payments made so far, that he is

subrogated to the lender's rights for such payments. Therefore, Creditor is not entitled to invoke the Section 523(a)(8) discharge exception as it applies to the student loan lender because (apart from a series of bankruptcy court decisions in other districts) he has offered no binding authority indicating that he is authorized to step into the shoes of the lender for student loan payments he has made. It is not settled law in this Circuit that a co-obligor seeking contribution on student loan payments is entitled to benefit by the Section 523(a)(8) discharge exception. Such exceptions should be construed narrowly. *Kawaauhau*, 523 U.S. at 62. Allowing Creditor to recharacterize his right to contribution as an "educational loan" within the meaning of the Bankruptcy Code would go far beyond the plain language expressed therein.

Therefore, because Creditor holds a pre-petition, contingent claim that is not excepted from discharge pursuant to any provision of 11 U.S.C. § 523, creditor will be enjoined from pursuing any collection actions currently pending against Debtor in any court, pursuant to the discharge order entered in 2010.

## C. Sanctions Will Not be Imposed Upon Creditor

Finally, given that the District Court has remanded both the original Motion to Reopen and Impose Sanctions and the Motion to Alter or Amend, the issue of potential sanctions against Creditor must be addressed. Debtor has argued that because Creditor has violated the discharge injunction with full knowledge that a discharge order had been entered, Creditor's conduct is sanctionable. *Hardej*, 563 B.R. at 863. Debtor asserts that Creditor must pay back all wages deducted from Debtor's paychecks, fees and expenses related to all of the various lawsuits, and punitive damages for willful disregard and violation of the discharge injunction.

However, Creditor presents a strong argument that his conduct is not yet sanctionable. Creditor argues that even if he is found to have violated the discharge injunction, such a conclusion does not lead to inevitable imposition of civil sanctions. The Supreme Court has recently written that a court should only, "impose civil contempt where there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019). This stems from the tradition of cases outside the bankruptcy context, wherein the Supreme Court has stated that civil contempt should not be the remedy "where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885). In *Longshoremen v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 76 (1967), for

12

instance, the Supreme Court explained that civil contempt is not appropriate unless, "those who must obey" an order "will know what the court intends to require and what it means to forbid."

Debtor argues that because Creditor did not assert his theory that he is a surety in the state court collection actions, he had no objectively reasonable basis to believe his conduct was lawful pursuant to the discharge order. But, that is unconvincing. Although Creditor did not make such an argument until the bankruptcy case was reopened, the theories he set forth in the state court collection actions were perhaps reasonable given that several courts had held that the claims in the nature of Creditor's were excepted from discharge pursuant to 11 U.S.C. § 523(a)(8)(A)(ii). *Kelly*, 582 B.R. at 506 (citing *Benson v. Corbin*, 506 B.R. 287, 297-98 (Bankr. W.D. Wash. 2014)); *see also Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014). While we have concluded that it is more prudent to follow cases that hold otherwise, there is no guiding authority on the subject provided by the Seventh Circuit or Supreme Court. It is difficult to state with conviction that Creditor's belief was objectively unreasonable given that he can cite to authority that supports his position.

Moreover, Creditor found support for his position in earlier decisions in this case. While we acknowledge, pursuant to the guidance offered by the District Court, that there was error in our initial analysis of the relationship between the parties, Creditor has offered several serious arguments as to why he should be able to collect from Debtor. Indeed, even the District Court's Opinion did not explicitly state that Debtor is free and clear of Creditor's claim. The District Court's instructions required us to consider upon remand both the characterization of Creditor's claim and any possible exception to discharge pursuant to 11 U.S.C. § 523. While the District Court Opinion indicated that Debtor's position regarding Creditor's pre-petition, contingent claim had support from the Seventh Circuit's *Rosteck* opinion, even that was not a complete rebuke of Creditor's arguments.

Debtor's repeated assertion that the issues in this case are clear cut and that Creditor's actions are violations of the discharge injunction are misguided. While this opinion agrees with Debtor's characterization of Creditor's claim as a pre-petition, contingent claim that was discharged, there is an argument to be made that because Debtor is in control of any missed payments, the parties could not have fairly contemplated any claim arising on the part of the Creditor. Likewise, there is an argument to be made that Creditor's apparent lack of a remedy against Debtor (a situation that the condominium association did not face in *Rosteck*) is an

incongruous result. And an objective observer would certainly have to consider Creditor's argument that his claim, pre-petition, contingent, or otherwise, is excepted from the discharge pursuant to *Kelly*, *Corbin* and *Rust*, especially given the lack of controlling authority on the subject in this Circuit. Creditor would not necessarily have known exactly what the court intended to "require and what it means to forbid." *Longshoremen*, 389 U.S. at 76. There is a fair ground of doubt in the instant case that does not yet warrant the imposition of sanctions against Creditor. *Molitor*, 113 U.S. at 618.

Taken altogether, Creditor did have an objectively reasonable basis for believing that his conduct did not violate the discharge injunction. Therefore, while he will be stayed from proceeding in his collection action against Debtor, this Court declines to impose any sanctions upon him for past events.

## CONCLUSION

For the foregoing reasons, Debtor's Motions will be granted to the extent that Creditor's state court collection actions against Debtor will be permanently enjoined. To the extent that Debtor's Motions seek to impose sanctions or hold Creditor in civil contempt for asserted prior violations of the discharge injunction, the Motions will be denied. A separate order will be entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of August, 2019

In re: Kristine Marie Shuey
Case No.: 10 BK 27054

## CERTIFICATE OF SERVICE

I, Amartya Bagchi, certify that on August 15, 2019, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*/s/ Amartya Bagchi*
Law Clerk

### Service by Electronic Service (10 BK 27054)

**Charles W. Dobra**
Charles Wm. Dobra, Ltd.
675 E. Irving Park Road
Roselle, IL 60172
630 893-2494
630 893-2497 (fax)
cwdobra@dobralaw.comcastbiz.net
Counsel for Debtor

**Lawrence W Lobb**
Drendel & Jansons Law Group
111 Flinn St.
Batavia, IL 60510
630-406-5440
630-406-6179 (fax)
lwl@batavialaw.com
Counsel for Craig V. Shuey

**Patrick S Layng**
Office of the U.S. Trustee Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785
USTPRegion11.ES.ECF@usdoj.gov
U.S. Trustee